UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INSITUFORM TECHNOLOGIES, INC.,
and INA ACQUISITION CORP.,

                                        Hon. Lawrence P. Zatkoff
          Plaintiffs,          Case No. 08-cv-11916

v.

LIQUI-FORCE SERVICES (USA), INC.,

          Defendant.
_____/

**OPINION AND ORDER CONSTRUING DISPUTED CLAIM TERMS**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 1, 2011

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on its March 17, 2011, order, setting a briefing schedule and *Markman* hearing for interpretation of the terms in U.S. Patent Nos. 6,337,114 and 6,899,832. [dkt 88]. The parties have fully complied with the Court's briefing schedule. The Court set the hearing for July 26, 2011. On July 26, 2011, the hearing was held, wherein both parties' counsel provided argument to the Court supporting their respective positions. Both parties' counsel also presented an electronic presentation to the Court. At the conclusion of the hearing, the Court took the parties' claim constructions under advisement, providing additional time to review the record, *Markman* briefs, and arguments presented at the hearing. After such review, the Court has interpreted the disputed phrases as set forth below.

## II.  BACKGROUND

Plaintiffs own patents on a technology referred to as "cured-in-place" pipeline repair, in which a flexible resin-soaked liner is inserted into an existing pipeline. The liner then cures and the structural integrity of the pipeline is restored, greatly reducing the repair expense as compared to traditional pipeline repair.  Plaintiffs hold U.S. Patent No. 6,337,114 (the "'114 patent") on the liner itself and No. 6,899,832 (the "'832 patent") on the lining procedure. On May 6, 2008, Plaintiffs filed this action alleging that Defendant is infringing the '114 and '832 patents by selling liner systems and training its customers on the lining procedure.  On May 26, 2009, pursuant to this Court's order, the case was stayed pending the outcome of reexamination proceedings as to the '114 and '832 patent.  The reexamination proceedings have concluded, and the case has proceeded forward.  After conducting a status conference with the parties, a *Markman* hearing was scheduled and the Court ordered a briefing schedule to identify the claim terms that the Court needs to interpret.  The claim phrases identified by the parties are found in the '114 and the '832 patents and are the subject of the instant *Markman* proceeding before the Court.

### A. BACKGROUND OF THE '114 AND '832 PATENTS

With respect to the technology disclosed in the '114 and '832 patents, sewer systems have a main line which usually runs under a street.  Lateral pipes then run from the main pipeline to building structures. When the main pipeline (*e.g.*, a sewer line) fails, ground water leaks into the sewers (or sewage may leak into the ground). The increased ground water is then transported to the sewage treatment plant, adding a substantial cost and expense to treat the additional ground water. Systems were invented to repair the main pipeline, and also to repair the lateral pipes attaching thereto.  However, the junction where the lateral pipe attaches to the main pipeline has been difficult

to repair for a number of reasons. The '114 and '832 patents tout an invention and method for installing such invention that overcomes these difficulties.

**i. The '114 Patent**

The '114 patent was filed on September 30, 1997, and issued four-and-a- half years later, on January 8, 2002, claiming a flexible lining with a flexible collar for lining lateral pipelines. According to the specification, the '114 patent claims a liner that relines the junction between a lateral pipe and a main pipeline. '114 patent, Col. 1, L. 15–20. The lateral pipe enters the main pipeline sideways, similar to the way a main sewer line at the road joins a lateral pipe running from a building. *Id.* at Col. 1, L. 26–30. When these joints begin to leak or become weak, the '114 patent teaches a liner that may be placed in the joint to remedy the leak without replacing the main line or lateral pipe. *Id.* at Col. 1, L. 30–40. The liner uses flexible tubular materials which are impregnated with curable synthetic resin. *Id.* at Col. 1, L. 50–58. In practice, the lining is placed at the junction of the lateral pipe and the main until the resin cures to a hard condition, leaving a hard lining and a tight seal. *Id.* at Col. 1, L. 15–20. One preferred embodiment disclosed in the '114 Patent is a lining tube with "a collar . . . which is preferably a sealed envelope containing a resin absorbent material which is impregnated with curable synthetic resin similar to the tube itself. As the lining tube . . . cures so the collar will also cure and the collar remains in place around the lateral aperture." *Id.* at Col. 4, L. 28–34. The collar fits around the opening where the lateral pipe joins the main pipeline, and is pressed against it while the resin hardens. *Id.* at Col. 1, L. 55–60. In the end, the integrity of the main pipeline and lateral pipe are restored.

*a. The Prosecution History of the '114 Patent*

The parties have filed the prosecution history of the patents with the Court.[1] Because the parties rely on excerpts from the prosecution history of the '114 patent, it is summarized as follows.

While reviewing the claims in the '114 patent before it was issued, the United States Patent and Trademark Office ("PTO") initially rejected the claims through several office actions (an office action is a document sent to the patent applicant to communicate information regarding the status of the claims). *Id.* at ITI 172–177. The office action stated that the claims were anticipated (a rejection under 35 U.S.C. § 102(b))[2] by U.S. Patent No. 5,108,533 (the "Long Patent"). As indicated in the office action, the Long Patent disclosed a flexible tubular member impregnated with a thermoplastic resin and disclosed a flexible collar. The Long Patent's tube and collar are formed preferably of a felt fabric. In response to the rejection, an interview occurred between Plaintiffs' representatives and a PTO Examiner. The PTO Examiner and Plaintiffs' representatives discussed the Long Patent. After the interview, the PTO Examiner prepared an interview summary. It indicates that the applicant (*i.e.*, Plaintiffs) would consider adding the following limitations: "(1) say that the fibrous material is 'resin absorbable' . . . ; (2) define the collar as: (a) engaging the main passageway so that it conforms to the shape thereof; and (b) being made of the same material as the tube." *Id.* at ITI 197.

---

[1] The prosecution history "contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed .Cir. 1996) (citations omitted)

[2] Under 35 U.S.C. § 102(b), a claim is rejected because "the invention was patented or described in a printed publication . . . or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."

After the interview, Plaintiffs filed a response, which in relevant part, stated:

> As noted on the Examiner's Interview Summary, Applicant's representatives pointed out the benefits of providing a liner having a fully flexible collar formed of the same material as the tubular portion of the lateral liner. Applicant has provided a flexible collar which is *free of the resilient retaining ring of the prior art* and actually conforms to the contour of the inner wall of the pipeline thereby forming an improved seal in the junction between the main pipeline and the lateral.

*Id.* at ITI 200 (emphasis added). In distinguishing the Long Patent in the response, Plaintiffs' representatives stated, "In essence, [the Long Patent] provides for a temporary bending of the retainer to allow installation. Applicant provides a conformable collar for forming the improved seal." *Id.* at ITI 202. Plaintiffs also modified the claim language at this juncture "to define the flexible collar as free of additional stiffer material to distinguish further from [the Long Patent]." *Id.* The response further states :

> During the interview, the undersigned discussed various ways to claim these features of Applicant's liner. It is respectfully submitted that by reciting that the collar is formed of the same flexible resin as resin absorbable fibrous material as the tubular portion of the liner, *is sufficient to exclude stiffening members such as the retaining ring of Long*.

*Id.* at ITI 204 (emphasis added).

On June 14, 1999, the PTO examiner responded to Plaintiffs' representatives' March 31, 1999, response, still rejecting the claims for containing subject matter not described in the specification under 35 U.S.C. § 112;[3] and unpatentable over the Long Patent for the reasons stated

---

[3] Under 35 U.S.C. § 112, "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

in its initial office action of December 10, 1998, under 35 U.S.C. § 103(a).[4] The Examiner stated, "The difference between [the Long Patent's] 'temporary bending' and Applicant's 'conforming' is not clear." *Id.* at ITI 233.

Plaintiffs' representatives responded in December of 1999, and on June 14, 2000. *Id.* at ITI 244–250, 257–266. The December of 1999 response states, in part, "As discussed at page 7 of the specification, collar 100 is formed of similar material as lining tube 14. Thus, both elements of the liner are fully flexible and are able to conform to the unique shape and configuration of the intersection." *Id.* at ITI 246. The June 14, 2000, response states:

> The preferred embodiment of the liner claimed . . . is as illustrated in Fig. 7. The liner is formed of two separate sections of flexible fibrous material which are bonded together. A collar 100 of the same resin absorbable material is bonded to a lining tube 14 . . . .
>
> [The Long Patent] describes the flexible tubular member assembly as that of the conventional cured in place type liner constructed of a felt fabric having a polymeric coating. The felt fabric layer is provided to hold the curable resin with the polymeric coating preventing loss of the resin . . . . [I]n contrast to this, by bonding two similar materials *applicant can provide the polymeric coating or the felt layer on the upper surface of the collar facing the tubular portion*. This provides a liner wherein the resin impregnated felt material is placed up against the interior of the lateral and is also against the interior of the main line during installation from the main line out into the lateral.

*Id.* at ITI 259 (emphasis added). Still, the Examiner held her position, stating that Plaintiffs' principal independent claim was obvious from the disclosures in the Long Patent. *Id.* at ITI 271–278.

---

[4] Under 35 U.S.C. § 103(a), a claim is rejected "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."

Following another interview with the PTO Examiner, according to an interview summary created by the PTO Examiner, the applicant was considering submitting claim language that further distinguishes the '114 patent from the Long Patent. *Id.* at ITI 298.  The response from Plaintiffs' respresentatives essentially reiterated its prior comments regarding the distinctions between the Long Patent and the '114 patent: "As [the Long Patent] teaches . . . 'the flexible retainer 46 is preferably positioned with a roll-over portion of the flexible tube 41.'  It is respectfully submitted that there is simply no teaching or suggestion in [the Long Patent] to omit the retainer and provide a liner as applicant shows in his Fig. 7. . . . The retaining feature of Long is a critical feature of the Long device.  This feature is absent in applicant's construction." *Id.* at ITI 305.

In July of 2001, the Patent Office mailed a Notice of Allowance of the patent claims.  Wherein the PTO Examiner highlighted why she had finally allowed the patent claims, noting:

> The liners recited in Applicant's claims, as amended, distinguish over the Long, et al. liners because the absorbent and impregnable nature of the liners and the fact that, as the resin absorbed therein cures, the collar conforms to the shape of the passageway into which it has been placed. The Long, et al. retainer is not designed to absorb resin, so that it does not cure in a manner that makes it conform to the shape of the passageway into which it was placed.

*Id.* at ITI 314–15).

Also in the prosecution history filed with the Court, is the reexamination proceedings of the '114 patent.  According to an office action sent on March 10, 2010, regarding Claims 1 through 4, the PTO Examiner, Terrence R. Till, rejected the claims as being anticipated by two Japanese patents, particularly Japanese Patent No. S63-286325 ("Wakagi '325 patent").  The Examiner also rejected the claims for being obvious in light of reading the Long Patent and the two Japanese patents together.

In response to the reexamination, Plaintiffs filed a declaration of a Lynn E. Osborn and a Dr. Richard Parnas. Both declarations have been submitted to the Court. Mr. Osborn is the Senior Applications Manager in the Engineering Department of Plaintiffs. Dr. Richard Parnas, as of May 10, 2010, is a professor of Chemical Engineering at the University of Connecticut. Both declarations make assertions to distinguish the claims of the '114 patent from the prior art cited by the patent examiner. Ultimately, the reexamination proceedings concluded and the '114 and '832 patents were issued as re-examined patents, finding the claims as patentable.

### ii. The '832 Patent

The '832 patent was filed on January 7, 2002, and issued on May 31, 2005, claiming the method for installing a flexible lining with flexible collar for lining lateral pipelines. '832 patent, Col. 1, L. 23–30. The specification of the '832 patent is essentially identical to the '114 patent. The '832 patent claims no additional materials compared to the '114 patent.

### B. DISPUTED CLAIM TERMS

After the parties submitted their initial briefs, the disputed terms were narrowed to two claim phrases: (1) "resin absorbable flexible material" and (2) "resin impregnated material." The phrase "resin absorbable flexible material" is used in the '114 patent, as opposed to the phrase "resin impregnated material," which is used in the '832 patent. Although Claims 1, 4, 5, and 6 of the '114 patent contain the phrase "resin absorbable flexible material", Claim 1 is representative of the disputed claims with respect to the use of the phrase. It reads:

> A liner of resin absorbent material for lining a lateral passageway connected to a main passageway, comprising:
>
> a lining tube of *resin absorbable flexible material* formed with a lumen conforming to the dimensions of the lateral having a collar of *resin absorbable flexible material* adapted to conform to the interior

> surface of the main passageway around the lateral aperture for forming an improved seal at the junction between the main pipeline and the lateral, wherein the tube and the collar are both resin impregnable.

'114 patent, Col. 4, L. 39–48 (emphasis added).

As to "resin impregnated material," the phrase is similar to "resin absorbable flexible material" because the '832 patent claims the method for installing a liner similar to the type claimed in the '114 patent. Thus, once a liner of the type claimed in the '114 patent is ready for installation, the "resin absorbable flexible material" is impregnated with resin before installation. In this regard, the '832 patent claims a method comprising of "a *resin impregnated* lateral lining tube of finite length and open ended having at one end a collar of *resin impregnated material* with a central opening." '832 Patent, Col. 4, L. 46–55 (emphasis added).

### III. LEGAL STANDARD

Claim construction is a matter of law for the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). In construing the terms of a patent claim, the court examines the intrinsic evidence, consisting of the claims themselves, the specification of the patent, and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed .Cir. 1996) (citations omitted). First, the Court examines the "words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention." *Id.* The words of a claim "are generally given their ordinary and customary meaning." *Id.* The ordinary and customary meaning of the words of a claim are "what one of ordinary skill in the art at the time of the invention would have understood [them] to mean." *Markman*, 53 F.3d at 986. There is a "'heavy presumption'" that claim terms carry their ordinary meaning as viewed by one of ordinary skill in the art. *W.E. Hall Co. v. Atlanta Corrugating, LLC*, 370 F.3d 1343, 1350 (Fed.

Cir. 2004) (quoting *Johnson Worldwide Assocs., v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999)).

Second, the Court reviews "the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitronics*, 90 F.3d at 1582. The specification "is dispositive; it is the single best guide to the meaning of a disputed term." The specification may reveal "an intentional disclaimer, or disavowal, of claim scope by the inventor." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005). Such intentional disclaimer or disavowal must indicate "a clear and unmistakable intent to limit claim scope in order to overcome ordinary meaning and narrow a claim." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).

Third, the court "also consider[s] the prosecution history of the patent." *Vitronics*, 90 F.3d at 1582; *see also Graham v. John Deere Co.*, 383 U.S. 1, 33 (1966) ("An invention is construed not only in the light of the claims, but also with reference to the . . . prosecution history in the Patent Office."). The prosecution history, however, lacks the clarity of the specification and the claims because it represents an ongoing negotiation between the PTO and the patent applicant. *Phillips*, 415 F.3d at 1317. Nonetheless, similar to the specification, the patent applicant may make an intentional disclaimer, or disavowal, of claim scope of a given term during this negotiation, thus narrowing the meaning of such terms. *Id.* (citing *Vitronics*, 90 F.3d at 1582–83) (citations omitted).

Aside from the intrinsic evidence, the court may review extrinsic evidence. *Id.* Extrinsic evidence "'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Id.* at 1318 (citing *Markman*, 52 F.3d at 980) (citations omitted). Extrinsic evidence, however, "is unlikely to result in a reliable

10

interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319. Thus, a claim term must be given its ordinary meaning unless the patent applicant redefined the term in the specification or made a clear disavowal of the claim scope of a given term in the intrinsic record. *Teleflex, Inc. v. Ficosa North America*, 299 F.3d 1313, 1327 (Fed. Cir. 2002). With these principles in mind, the Court considers the disputed claim phrases.

## IV. ANALYSIS

### A. RESIN ABSORBABLE FLEXIBLE MATERIAL

The phrase "resin absorbable flexible material" is used in each claim to describe the lining tube and collar. As to the lining tube, Claim 1 reads, "a lining tube of resin absorbable flexible material found with a lumen." As to the collar, Claim 1 reads, "having a collar of resin absorbable flexible material." Claims 4, 5, and 6 contain the same language as Claim 1 with respect to describing the lining tube and the collar.

Defendant proposes two constructions of "resin absorbable flexible material" for the Court to consider: (1) a "material including only resin absorbent material," or (2) a material that is not "any material which would be relatively resilient, or that would be non-impregnable." Defendant argues that these are the proper constructions of the disputed phrase because Plaintiffs made a clear disavowal of any additional elements during the original prosecution and reexamination proceedings of the '114 patent. Specifically, Defendant relies on Plaintiffs' representations to the PTO Examiners when distinguishing the '114 patent's liner and collar from the prior art, including the Long Patent and the Wakagi '325 patent.

In response, Plaintiffs read the phrase "as a material capable of being impregnated with resin such that the resin substantially fills the voids of the material while the material remains sufficiently

11

pliable such that it is capable of being stretched or deformed." According to Plaintiffs' construction, the phrase does not exclude an additional element, such as an envelope or film to hold the resin in the material. Plaintiffs argue, despite Defendant's cited excerpts from the prosecution history, that the patent specification and prosecution history support their interpretation.[5] Plaintiffs conclude that the specification makes clear that the lining tube and the collar are comprised of more than resin absorbable material, as the "sealed envelope" ensures that the resin does not leak out of the material. Plaintiffs further point out that the prior art cited in the '114 patent's specification indicates that to impregnate the resin into the material, a film is applied to the material to ensure the resin does not leak out. Plaintiffs also insist that because the claims use open-ended claim language (*i.e.*, "comprising" or "consisting essentially of"), that Plaintiffs were not required to claim components that do not materially affect the basic and novel properties of the invention, such as an envelope or film to stop the resin from leaking out of the material.

The Court adopts Plaintiffs' construction as it is supported by the claims, specification, and prosecution history. As to the claims themselves, in reviewing Claim 1, no language limits the "resin absorbable flexible material" to *only* resin absorbable flexible material. A reading of Claim 1 states that a "liner" is constructed of a "tube" with a "collar" portion, and both the "tube" and the "collar" are of "resin absorbable flexible material." Claim 1 further reads that the "tube" and the "collar" are "both resin impregnable." Claim 1 contains no words expressly excluding the use of a film or envelope as an element used to make the "resin absorbable flexible material."

Furthermore, the words of Claim 1, also representative of the other independent claims in

---

[5]The portion specifically relied on by Plaintiffs reads "the lining tube . . . has a collar . . . which is preferably a sealed envelope containing a resin absorbent material which is impregnated with curable synthetic resin similar to the tube itself." '114 patent, Col. 4, L. 28–33.

12

the '114 patent, include the transition phrase "comprising." When a claim uses an "open" transition phrase, such as "comprising", its scope may cover devices that employ additional, unrecited elements. *See Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986); *Elkay Mfg. Co. v. Ebco Mfg. Co.,* 192 F.3d 973, 977 (Fed. Cir. 1999). This transition phrase in the '114 patent is an "open" transition, and thus, the claim may cover additional materials that are not recited in the claims. *See id.* In reading the claims in light of the specification and the prior art cited therein, a person of ordinary skill in the art would understand that a film or envelope has been used with resin impregnated material to stop the resin from leaking out of the material during installation. Thus, the ordinary and customary meaning of the phrase in Claim 1 supports Plaintiffs' construction because an envelope or film is a basic unrecited element known to those skilled in the art. Neither party has provided sufficient evidence that an envelope incorporated into the resin absorbable flexible material would prohibit the material from being "flexible" or "resin absorbable".

As to the specification, it also supports Plaintiffs' construction. It contains no language expressly defining the phrase or limiting the meaning of "resin absorbable flexible material," thus the ordinary and customary meaning controls. *See Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999). As Plaintiffs also point out to the Court, a preferred embodiment is described in the specification as including an envelope with a resin absorbent material, explaining the preferred embodiment as "the lining tube . . . has a collar . . . which is preferably a *sealed envelope containing a resin absorbent material* which is impregnated with curable synthetic resin similar to the tube itself." '114 patent, Col. 4, L. 28–33 (emphasis added). Aside from the Federal Circuit's rejection of limiting patent claims to the preferred embodiment in the specification, *Liebel-Flarsheim Co.*, 358 F.3d at 906, if this Court were to limit Claim 1 to the preferred

13

embodiment, such an improper construction would still find that "resin absorbable flexible material" includes the use of a film or envelope. Therefore, logically construing the claim so that it is not limited by the preferred embodiment in the specification informs the meaning of the phrase "resin absorbable flexible material" to include, but not be limited to, incorporating a film or envelope.

Moreover, there is no evidence that one skilled in the art would find "resin absorbable flexible material" to mean a resin absorbable material that excludes the use of an envelope, or similar element, to retain the resin in the material. The specification itself cites to Great Britain Patent Nos. 1340068 and 1449455. Both patents teach the use of a liner with a "laminate" or an envelope surrounding a fibrous material, and similar to the '114 and '832 patents, these liners are used for curing main pipelines or lateral pipes. *See* GB Pat. No. 1340068, at 2:15–35 (explaining "a flexible laminate comprising a membrane which . . . is impregnated with an uncured synthetic resin"); GB Pat. No. 1449455, at 1:55–61 (explaining "[t]he tube of absorbent material may be flexible foam, felt and/or cloth which is wetted out with the resin, and surrounding the absorbent tube is the liquid impermeable tube, which may be of synthetic plastics material such as polyethylene or poly vinyl chloride"). As such, inclusion of an envelope or film on the liner is known to those skilled in the art. *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1156 (Fed. Cir. 2004) ("An inventor need not, however, explain every detail since he is speaking to those skilled in the art.") (internal citations omitted.). Because Plaintiffs were not required to describe every element to one skilled in the art, the specification and prior art cited therein, support Plaintiffs' construction.

As to the prosecution history, Defendant's arguments for adopting its constructions heavily rely on statements made by Plaintiffs' representatives to the PTO while prosecuting the '114 patent.

14

Defendant's argument that the Examiner was not aware that a film was used in the prior art lacks any merit in consideration of the Manual of Patent Examining Procedure, a manual that outlines the procedures carried out by examiners of the PTO. In examining an application for patent, an examiner must conduct a thorough search of the prior art, which includes identifying the field of search (*i.e.*, domestic or foreign patents), selecting the correct search tool (*i.e.*, an automated search of foreign patents), and determining an appropriate strategy for the search. MPEP § 904.02. Defendant fails to provide any evidence that the Examiners failed to follow these procedures when reviewing the '114 and '832 patents and that the Examiners were unaware of a film being used in the prior art.

Defendant also asserts, despite the specification and claim language, Plaintiffs made a clear disavowal of any additional material comprising "resin absorbable flexible material." The Court finds no support for Defendant's interpretation or arguments in the prosecution history. Rather, Defendant's interpretation is too narrow, and it has not identified any words or statements that indicate a clear intent by Plaintiffs' representatives to exclude an envelope from the disputed phrase. In sharp contrast to Defendant's interpretation, Plaintiffs' representatives even discussed with the PTO Examiner a polymeric coating that held in the impregnated resin, stating:

> In contrast [to the Long Patent], by bonding two similar materials applicant can provide the polymeric coating or the felt layer on the upper surface of the collar facing the tubular portion. This provides a liner wherein the resin impregnated felt material is placed up against the interior of the lateral and is also against the interior of the main line during installation from the main line out into the lateral.

To the extent Plaintiffs' representatives were differentiating the '114 patent from the Long patent, the representatives did not make a clear disavowal of the use of a sealed envelope or other additional basic elements. Rather, Plaintiffs' representatives' arguments to the PTO Examiner were

distinguishing the Long Patent's ring from the '114 patent's collar. *See* '114 patent at ITI 200 (explaining "Applicant has provided a flexible collar which is free of the resilient retaining ring of the prior art," and the claim language "is sufficient to exclude stiffening members such as the retaining ring of Long").[6]

After reviewing Defendant's cited excerpts from the reexamination proceedings, the Court reaches the same conclusion that a clear intent to limit the claim scope is lacking. To the extent that Plaintiffs were overcoming the PTO's rejection based on the Wakagi patents during the reexamination proceedings, again no statements made by Mr. Osborn in his declaration submitted to the PTO make a clear disavowal of an envelope or film. *SanDisk v. Memorex Prods. Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005) ("There is no 'clear and unmistakable' disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term."). Mr. Osborn's declaration fails to indicate that if an envelope were present in the '114 patent, the collar claimed in the patent would fail to stretch and form to the main pipeline. Rather, he was pointing out to the examiner that the liner and film in the Wakagi '325 Patent could not be stretched to form the collar claimed in the '114 patent. As such, Defendant has failed to show that Plaintiffs disclaimed the presence of other materials in the liner during prosecution of the patent and reexamination of the patent.

Accordingly, the Court will adopt Plaintiffs' proposed interpretation, namely that the phrase "resin absorbable flexible material" means "a material capable of being impregnated with resin such that the resin substantially fills the voids of the material while the material remains sufficiently

---

[6] Defendant makes no argument nor points to any statements in the record that excluding "stiffening members," as stated in the prosecution history, would exclude a film or envelope in the ordinary and customary meaning of "resin absorbable flexible material."

pliable such that it is capable of being stretched or deformed."

## B. RESIN IMPREGNATED MATERIAL

The phrase "resin impregnated material" is found in Claims 1, 6, 17, and 18 of the '832 patent. The phrase is used in each claim to describe the collar, and similar terms are used to describe the lining tube. Claims 6, 17, and 18 contain the same language as Claim 1 with respect to describing the lining tube and the collar. As to the lining tube, Claim 1 reads, "a resin impregnated lateral lining tube." As to the collar, Claim 1 reads, "a collar of resin impregnated material." After review of the claims in the '832 patent, the Court need not conduct any further analysis than the analysis conducted *supra* with regard to the phrase "resin absorbable flexible material." As one of ordinary skill in the art would understand, the '832 patent claims the method for installing an invention similar to the type claimed in the '114 patent. The only difference that is clear in the '832 patent is that for installation, the "resin absorbable flexible material" must be impregnated with resin, at which point it is referred to as "resin impregnated material." For this reason, the Court finds that "resin impregnated material" means "a material impregnated with resin such that the resin substantially fills the voids of the material while the material remains sufficiently pliable such that it is capable of being stretched or deformed."

## V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that the phrase "resin absorbable flexible material" in the '114 patent means "a material capable of being impregnated with resin such that the resin substantially fills the voids of the material while the material remains sufficiently pliable such that it is capable of being stretched or deformed."

IT IS FURTHERED ORDERED that the phrase "resin impregnated material" in the '832

17

patent means "a material impregnated with resin such that the resin substantially fills the voids of the material while the material remains sufficiently pliable such that it is capable of being stretched or deformed."

IT IS SO ORDERED.

                                            S/Lawrence P. Zatkoff
                                            LAWRENCE P. ZATKOFF
                                            UNITED STATES DISTRICT JUDGE

Dated: August 1, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 1, 2011.

                                            S/Marie E. Verlinde
                                            Case Manager
                                            (810) 984-3290